der the statute another may be appointed to complete the administration."

In Re Windom's Trust L. R., 1 Equity Cases 290: "Personal representative means executor or administrator."

"The words personal representative are to be understood in the ordinary sense of executors and administrators unless controlled by the context to the will.' Siberton v. Skeels, 5 Eng. Chan. Rep., 587.

Used in the ordinary sense to arrive at a proper understanding of this statute, the same rule would apply and the words personal representative as used in the Ohio statute evidently means executor or administrator .

Therefore the demurrer will be overruled.

---

(Cuyahoga County Common Pleas.)
September, 1900.
JAMES CORRIGAN v. JOHN D. ROCKE
FELLER.

---

An award made by arbitrators chosen by the parties to a cause pending to determine the issue therein, is not reviewable either as to its conclusions of law or facts, unless the contract of submission makes provision for such a review.

Where the contract of submission to arbitration expressly provides that the award made shall be final and conclusive upon the parties, and that each party will stand to and abide by and perform such award under the agreement, a court has no power to review either the findings of fact or law made by the arbitrators, or to inquire into the correctness of the legal rules which the arbitrators selected and applied to the facts they found, whether their judgments in these respects are correct or not.

Where the contract of submission to arbitration provides that "hearings may be adjourned from time to time and place to place by a majority of the arbitrators, but that the arbitrators shall agree in all other matters, such requirement has reference to all matters, whether of law or fact, the determination of which would be essential to sustain the final award of the case. Therefore the non-concurrence of the arbitrators as to the adequacy of the price paid by the trustee to the *cestui que trust* will not invalidate the award made in favor of the trustee where the arbitrators find that the *cestui que trust* has lost his right to rescind the contract by laches.

The doctrine of laches applies to the time within which a party is to take advantage of his right to rescind a contract, while the statute of limitations applies to and fixes the time within which he must bring his action to enforce that rescission, if such action is necessary. While therefore, the time for bringing such action is limited to four years by the statute, the finding of arbitrators that a plaintiff was guilty of laches in failing for two years to give notice of rescission of a sale of stock to the defendant is not in conflict with the statute.

LAMPSON, J.,

In this action on June 30, 1897, the plaintiff filed his petition against the defendant in the court of common pleas of this county, and by his petition he sought to annul and cancel a certain contract made and entered into in writing between himself and the defendant on or about February 19, 1895, by which contract, among other things, plaintiff sold to defendant 2,500 shares of Standard Oil Trust certificates, being, as the court understands, certificates of holdings representing the interest of the plaintiff at that time in an unincorporated association, the property of which was held and the business managed by a board of trustees, of which the defendant was one , and perhaps the president of said board.

The grounds upon which the plaintiff sought to annul this contract can be classified generally under two heads, without going into the particulars of the allegations.

The first, which might be called actual fraud, consisting of false and fraudulent misrepresentations on the part of the defendant as to the value of the certificates at the time, and of the property which these certificates represented, which was in the hands of the trustees to be distributed to the various owners of the same. False and fraudulent claims on the part of the defendant that certain large loans from defendant to plaintiff had matured, and fraudulent demands made by defendant on plaintiff for payment of the same, and threats made that unless payment was immediately made, a forced sale of these certificates, then held by plaintiff as collateral security for these loans, would be made, and the refusal of the defendant to furnish any information to the plaintiff as to the real value of these certificates, and as to he amount of property in the possession of the trustees, or under their control, or available, as represented by the certificates, to enable the plaintiff to make any loan or dispose of the certificates for the purpose of satisfying this large indebtedness to the defendant, all of which the plaintiff says was done with the fraudulent intent and purpose to compel the plaintiff to sell said certificates to him, which he says was accomplished in the transaction out of which this contract grew.

Second, that the relation of trustee on the part of said defendant existed towards this plaintiff, who was then his *cestui que trust* as to these certificates, and all of the property which they represented, which relationship the plaintiff alleged made it the duty of the defendant to furnish to the plaintiff full and ample means of information concerning the property, its amount and value so held in trust and to give to the plaintiff all information possessed by the defendant at any and all reasonable times when called upon to do so; and that defendant failed to do this and dealt with the

plaintiff with reference to this trust property without thus furnishing plaintiff with knowledge, or the means of knowledge, concerning said property, which was possessed by the defendant at the time said transaction took place and said contract was made.

On September 11, 1897, the defendant filed his answer in this court in which, after making certain admissions as to the creation of this trust, and the allegations concerning it in the petition, and its property and the payment of dividends, the making of certain loans from himself to the plaintiff, and the contract as alleged in the petition, he denied all of the other allegations in the petition which charged him with fraud, either active or constructive, under the first and second heads in which I have classified them.

On January 7, 1898, the plaintiff filed a reply taking issue with certain affirmative allegations of the answer, none of which are important in the consideration of the case as heard before this court. In this condition the cause remained until September 1, 1899, pending in this court, when the defendant, by leave of court filed his supplemental answer in the same, setting forth, in substance, an agreement in writing between the parties to submit the issues thus joined between them to the award and determination of William G. Choate and William D. Guthrie of New York, and William A. Lynch of Canton, Ohio, and that said agreement provided, among other things, that each of said parties should execute and deliver to the said arbitrators a stipulation providing that judgment might be entered against them in said action without notice to the other party or his attorney, and that the plaintiff should further execute and deliver to said arbitrators a general release from himself to this defendant from any and all manner of claims and causes of action, whether at law or in equity, set forth in the petition in this action.

It further alleges that said arbitrators met pursuant to said agreement, hearing was had, both parties being present and offering testimony therein, and that within the time required by the agreement said arbitrators made their finding and award in said cause, and thereby found the issues joined in favor of the defendant, and that costs and expenses of said arbitration, amounting to $4,750.00, should be borne equally by said parties, further alleging that before entering upon said hearing defendant executed and delivered to said arbitrators the stipulation required of him, and the plaintiff executed and delivered to said arbitrators his warrant of attorney for the entry of judgment herein against him, as by said agreement which is as follows·

IN THE COURT OF COMMON PLEAS.

State of Ohio, Cuyahoga County, No. 60, 101.

James Corrigan, plaintiff, v. John D. Rockefeller, defendant.

It is hereby stipulated and agreed that judgment may be entered in this action forthwith without further notice to the plaintiff or his attorney, dismissing this action upon its merits without cost as against the defendant, and that an order for judgment may be entered accordingly without notice.

Dated October 18, 1898.

             James Corrigan, Plaintiff,

Burke & Ingersolls Attorneys for plaintiff.

Said agreement was duly acknowledged.

It is further alleged that the defendant, before the making of said award by said arbitrators, paid and performed all the conditions of the same, and that he is entitled to and asks to have said judgment entered in said cause in his favor, as provided by agreement and power of attorney, thus herein set out.

On September 27, 1899, the plaintiff filed his reply to said supplemental answer of the defendant, in which reply the plaintiff admits the execution of the various papers and agreements set out in said answer, and that the said arbitrators about April 20, 1899, in form made an award; but the plaintiff alleges said award to be null and void for the reasons,

First. That said agreement provided that "Hearings may be adjourned from time to time and place to place by a majority of the arbitrators, but in all other matters all of them must concur." That disregarding this provision of said agreement, said arbitrators failed to and did not concur in all the issues joined between the parties, and made the award in violation of that requirement of said agreement.

Second. That said arbitrators did not consider said issues and evidence offered by either party together, but upon the conclusion of said hearing separated, and afterwards the issues were from time to time considered by two of said arbitrators in the absence of the third.

Third. That said arbitrators were required to hear and determine the issues between said parties according to law, as if they were sitting as a court of equity hearing said action in the state of Ohio; that this they failed to do, and did not find the law and facts correctly.

This cause came on to be heard by this court upon this supplemental answer and this reply. Upon that hearing the defendant offered in evidence the contract in writing providing for said arbitration, and the award signed by all of the arbitrators, and the supplemental agreement between the plaintiff and the defendant extending from time to time, until May 1, 1899, the time within which the arbitrators might render and deliver their award.

The plaintiff offered in evidence the paper

denominated "Opinion by Arbitrators" and the depositions of the arbitrators taken since the hearing before them. Upon this hearing the defendant's counsel objected to the introduction of the evidence which was offered by the plaintiff, and the questions thus raised are properly the first questions to be considered. The first objection was to the paper signed by the arbitrators and styled "Opinion of the Arbitrators." In my judgment, this objection should be overruled. The contract of submission to arbitrate went further than a mere final award. It provided, as claimed by the plaintiff, that the arbitrators should all concur in all matters other than adjournments of time and place, and the parties might have requested them to make and deliver their findings so as to show on the face of the record whether or not the award was in accordance with these provisions of the contract. This seems to have been the view taken of their duties by arbitrators, for they prepared this paper styled "Opinion" setting forth in the same, their findings of fact and of law, and delivered a copy to each party at the same time they delivered the award itself; and I think it patent that it is available for each party as showing all matters and things therein disclosed and competent to be resorted to by the court for that purpose in this hearing.

The other objection made by the defendant to the depositions of the individual arbitrators, showing the manner in which they considered the questions in the case and what their individual opinions were concerning various matters before them, is not, to my mind, so free from doubt. But as it is probable the plaintiff has no right of appeal, and there may be a question as to the correctness of the objection, I deem it advisable and proper to give him the benefit of all evidence offered upon the issue made by the supplemental answer and reply thereto, so that objection is overruled.

It was conceded upon the hearing by both parties that if the award pleaded by the defendant had not been rendered in accordance with the terms of the contract of submission, then the relief asked for by the defendant in his supplemental answer could not be granted; but that if said award had been rendered according to the terms of said agreement, the defendant would be entitled to said relief, and the case would be determined thereby.

This brings us to a consideration of the real grounds of objections put forward by the plaintiff to the award set up by the defendant. As a mater of convenience, I will consider them in the inverse order in which they have been pleaded and stated heretofore, which makes the first objection that the arbitrators did not correctly determine the law applicable to the facts found. It is a well-settled proposition of law, which I presume will not be

questioned, that an award made by arbitrators chosen by the parties to a cause pending to determine the issues therein, is not reviewable either as to its conclusions of law or facts, unless the contract of submission makes provision for such a review.

Upon an inspection of this contract of submission, I fail to find any provision therein looking towards a review by the court of the findings of said arbitrators, but, on the contrary, I find it expressly provided that the award made in accordance with said agreement shall be final and conclusive upon the parties, and that each party will stand to and abide by and perform said award under the agreement. Under this agreement it is clear to my mind, that this court on this hearing has no power whatever, to review either the findings of fact or law made by the arbitrators in this case. Therefore, whether their judgments in these respects are correct or not is a matter with which this court has nothing to do. As to these matters the law leaves the parties where they have placed themselves by their solemn agreement to abide the judgment of these arbitrators as final and conculsive upon them. In fact, beyond the mere recital contained in the paper called an "Opinion," this court has no knowledge whatever of the facts in this case; and this paper sets out simple findings of facts without any disclosure either by the paper or upon the hearing by evidence of the testimony upon which the arbitrators based their conclusion. This was undoubtedly because both parties recognized the well-settled rule the court had no authority under the contract of submission to inquire into the evidence presented to the arbitrators for their consideration, and this rule applies as conclusively to the law as it does to the facts; and this court has no more right to inquire into the correctness of the legal rules which the arbitrators selected and applied to the facts they found than to the facts themselves. I have given so much consideration to this question not because of the force with which it was presented to the court, but because, in my judgment, it bears with considerable importance. upon the other phases of the case

To the second objection that the arbitrators did not consider the issues and the testimony submitted to them together, but upon the close of the meeting before they separated, and thereafter two of the arbitrators at different times considered questions involved in the case in absence of the third, it is sufficient to say that the testimony does not sustain that objection. The depositions of the arbitrators, show—while they do disclose the fact that the arbitrators among themselves at different times considered the subject-matter of the questions, —that at no time were any conclusions formed, or determination made of any of the mat-

[COPYRIGHT. 1901, BY CARL G. JAHN.']

ters or things involved in this hearing before them, except in the presence and hearing of all of the arbitrators named.

Coming then to a consideration of the other and more serious reason assigned and pressed upon the court by the plaintiff for disregarding this award, with the understanding that in the consideration of this subject the court has nothing whatever to do with the correctness of the findings of law or facts made by the arbitrators, as the parties have seen fit to provide for that in their agreement, it is claimed, in substance, that the contract of submission provides that, except as to adjournment from time to time or place to place, in all matters all of the arbitrators must concur; that as a matter of fact, shown by the paper marked "Opinion," and the evidence by the depositions, the arbitrators did not all concur in all matters under their consideration.

In considering this objection, I find upon investigation of the contract of submission, this provision:

"Hearings may be adjourned from time to time and place to place by a majority of the arbitrators, but in all other matters all of them must occur. The award of the arbitrators must be in writing in dupicate," etc., providing for the manner of delivery of the same. The construction of this language is important in determining the objection raised under it by the plaintiff, and to do this it is important to refer to other provisions of the agreement, as it should be considered as an entire agreement, and must be so considered in order to give proper force and effect to its various provisions.

On the first page, after reciting the pendency of this action, this agreement provides: "Mr. Corrigan and Mr. Rockefeller have agreed to submit and refer all the issues of law and fact joined between the parties in said action to the award and determination of William G. Choate," etc., naming the persons.

Again on the same page, after formally designating by name and residence William G. Choate and his associates as arbitrators it provides, "to be arbitrators between us, to whom we refere all the issues of law and fact joined by the pleadings in said action, to hear and finally determine the same."

Again on the same page it provides, "The hearing before the said arbitrators shall be conducted under the pleadings and proof in the said action, and in all respects in the same manner as though said issues were regularly tried in the court of common pleas in the state of Ohio. The said arbitrators shall hear and determine all the issues in the said action as though they were sitting to hear and determine said issues as a judicial court and with the same power to permit amendments to pleadings, and to pass upon the sufficiency of the

pleadings and the competency and relevancy of evidence, and to do such other things as upon the trial of an action are possessed by the courts where the said action is now pending, providing that no amendments shall be allowed which shall substantially change the cause of action."

Then upon the third page appears the provision which has already been quoted, regarding the concurrence of all the arbitrators in all matters other than adjournments from time to time and place to place.

It is clearly apparent, from a consideration together of all these provisions, that it was the full intent and purpose of the parties to this contract of submission, to vest the arbitrators with full powers to fully and finally end the matters in dispute between them in this case, and that their judgment or finding, whether for plaintiff or defendant, should be based upon such findings of law and fact as would make it a complete answer, not only in terms but in fact, to every claim or issue raised against the finding thus made by them in the case, and that in all these material facts thus found, and upon which their final award should be based, all the arbitrators should concur.

Such a final conclusion was in the minds of the parties of this contract, and it is evident that it was with reference to such finding that the terms "all other matters" was used in the provisions of this contract by the parties. So that so far as the issues raised by the supplemental answer and reply are concerned, the requirements of the contract that the arbitrators shall concur in *all other matters,—* has reference to all other matters, whether of law or fact, the determination of which would be material or necessary to sustain the final finding made in the case. In fact, in the argument on this objection it seems to have been substantially the construction placed upon this provision by both parties, and it seems to have been the one recognized by the arbitrators themselves.

The question then is, does the finding of the arbitrators come within these requirements of the contract? To determine this we must apply the findings to the issues.

The plaintiff sought by his petition to force a rescission of the contract made between himself and defendant. The grounds were, first, actual fraud, such as deceit, schemes, misrepresentation, etc. Second, that at the time the contract was made the relation of trustee and *cestui que trust* existed between them.

To the first ground, the arbitrators say as follows in their opinion: "They are satisfied" (speaking of themselves), and I quote their language, "by the evidence that the charges of actual fraud set forth in the complaint against the defendant are not proven.

On the contrary, the evidence has satisfied them that the defendant made the purchase of the stock in question in good faith and at what he believed to be its full value and a fair price, and that he did not use the circumstances or the necessities of the plaintiff as a means of extorting from him either the purchase of the stock or its purchase at an improper or insufficient consideration, and that he was actuated by a desire to accommodate the plaintiff and relieve him from embarrassment by making with him the agreement of which the purchase of stock was a part."

This would seem to be as full a finding against the plaintiff, all arbitrators concurring therein, as the evidence shows, as could be made, as to every allegation and material fact claimed or set out in the petition as a basis for plaintiff's right to have the contract rescinded, except such as grow out of the alleged relation of trustee and cestuis que trust, and in fact, that seemed to be conceded by the plaintiff upon the hearing of this case.

Having thus completely disposed of these allegations of actual fraud, as the arbitrators termed them, against the plaintiff, they took up the second and only other ground of recovery contained in the petition, to-wit, that growing out of the alleged relation of trustee and cestui que trust and as to this ground of relief in the second subdivision of their opinion they say as follows:

"Second. We are of the opinion that the relation between the defendant and the plaintiff with respect to the stock in question was that of trustee and cestui que trust, within the meaning of the equitable rule which renders a purchase by the trustee voidable at the election of the cestui que trust."

The arbitrators proceed further in this second sub-division to give reasons for their finding, but these are entirely immaterial in this inquiry.

Then again, under the same subdivision, after giving their reasons for finding that this relationship existed, they find: "This relation gave the trustee superior means of information with regard to the property, which information may well be taken to be superior means of ascertaining its value."

This last finding which I have read is, in fact but a statement of what the law, under the circumstances and facts already round in that subdivision, would be presumed to exist.

The testimony taken, shows, outside of the opinion itself, that these findings were concurred in by all of the arbitrators, except wherein the opinion discloses the fact that all did not concur.

These findings of law and fact set out in the second sub-division of the arbitrators constituted good grounds for the rescission of the contract in question. And upon these findings of law and fact the plaintiff as entitled to a final judgment or award in his favor, provided the arbitrators could not all concur in finding from the evidence that the defendant had made out some one or more of the defenses which he claimed; and that seems to have been the view of the arbitrators as clearly expressed, not only in the opinion itself, but in this testimony.

The record discloses that the defendant presented a number of reasons why the plaintiff should not recover against him. It is only necessary for the court to consider the two which are considered by the arbitrators. One defense made by the defendant was that although this relation of trustee and cestui que trust existed between him and the plaintiff, of such a character that according to the rules of equity, it rendered the purchase of this stock voidable at the election of the plaintiff, yet that in fact he had no advantage in the making of the contract from any superior knowledge which he had gained from his relation as trustee, and that by reason thereof the parties dealt with perfect equality, and he paid the full value of the stock.

Plaintiff's counsel in their brief say: "This relation being shown, well-understood rules of equity imposed upon the trustee, in order to support the purchase of the trust property and the validity of the contract, the necessity of proving affirmatively certain facts establishing the entire fairness of the transaction between himself and his cestui que trust," among which are recited:

"First. That the price that he paid for the trust property was its full and adequate value, and

"Second That he made full and complete disclosure to the plaintiff of all the knowledge possessed by him of the state, condition and value and earning power of the trust property; that he had no advantage in the transaction by reason of his superior knowledge gained in his relation of trustee."

This is undoubtedly a correct statement of the law and duties of the defendant under that finding made by the arbitrators, which was recognized not only by the arbitrators, but by the defendant as well, for he undertook, before the arbitrators, to establish these things as a defense to this right of action which the arbitrators had found existed against him and in favor of the plaintiff.

In the third sub-division of their opinion the arbitrators give their conclusions of this matter as to this defense, and they say: "The arbitrators are not unanimous on the question whether the defendant has shown affirmatively that his purchase of the stock was for its full value at the time of the purchase, or that in fact he had no advantage in the transaction

from the superior knowledge which he gained from his relation as trustee.

This is the finding in the third subdivision of the opinion upon this first defense which is considered by them, and which was thus put forward by the defendant as a complete defense to this right of recovery which had been found to exist against him, and in favor of the plaintiff, and the arbitrators, so far as the opinion discloses, did not all concur in finding these facts which the plaintiff says were necessary to be proven by the defendant, and which the plaintiff says it was his duty, under the law, to establish in order to relieve himself of the liabiltiy to respond to the plaintiff because of the relationship existing between them at the time this purchase took place, and t..erefore the arbitrators did not give the defendant the benefit of that defense.    When I turn to the testimony of the arbitrators, I find that they go into this very clearly and more fully.    Reading from the deposition of William G. Choate, he says: "The first question that we considered was the question of actual fraud.    On that question I think that at our first meeting after the case was submitted, we compared our views and found that we were all of one mind, as stated in the opinion.    The next question that we considered was the question of the relation of trustee and *cestui que trust*.    Having come to the conclusion, as stated in paragraph second, that that relation existed, we then considered the question whether this was on all the facts one of those rare cases where the court of equity might sustain the contract notwithstanding the existence of the relation; and the first question that was discussed bearing upon that main topic was the question, which was debated by counsel and was by · us understood to be in controversy, whether Mr. Rockefeller paid full and ample value for the stock.    As I said yesterday, that question was very much discussed.    In point of fact, there were three views entertained by the arbitrators.    Each had a different view.    One of the arbitrators was of opinion that Mr. Rockefeller not only paid the full market value, but the full and ample actual value.    Another of the arbitrators was of opinion that while he might be said to have paid the actual market value, yet upon all the evidence, the property was worth more; and I do not think that that arbitrator varied from that to the end.    This second arbitrator that I refer to, doubted whether there was strictly and properly a market for the stock. The third arbitrator thought that Mr. Rockefeller paid the market value, but doubted whether, on the whole, the property might not really have been worth more.    That expresses, I think, the difference upon one ground.    Then the arbitrator who thought that Mr. Rockefeller. paid full

and adequate value, also had this idea, as I understood it, that while there was technically a relation of trustee and *cestui que trust*, yet that upon all the evidence, considering what Mr. Corrigan knew, and the extent to which Mr. Rockefeller availed himself of what we have called his *superior means* of knowledge, that this superior means of knowledge, which we thought Mr. Rockefeller had, did not practically enter into the trade at all, did not affect his mind.    That is what is meant by this expression under division third: 'or that, in fact, he had no advantage in the transaction from. the superior knowledge which he gained from his relation of Trustee.'    The other arbitrators did not agree with this view.    Consequently we could not base any conclusions favorable to the defendant upon the view entertained by this one arbitrator.    That, I think, explains the differences which are expressed, in the beginning of this third division of the opinion."

In other words, in the third subdivision of this opinion, the arbitrators are considering the defense which the defendant made to the cause of action already found to exist in favor of the plaintiff in the second subdivision of the opinion to-wit, that notwithstanding that relationship on the face of it, gave to him superior means of knowledge, yet in fact he did not possess it, and that he paid full value for this stock.

Upon that defense there were different opinions held by the arbitrators, and a majority of them were opposed to finding the material facts of that defense to exist.    Only one arbitrator was of the opinion that full market and actual value, had been paid for the stock and that no advantage was obtained or possessed by Mr. Rockefeller in the transaction by reason of what they termed his superior means of knowledge.    The other two arbitrators, the majority of them, entertained the opinion that while the full market value was paid, yet the full actual value was not paid, and that there were superior means of knowledge available to Mr. Rockefeller and not available to Mr. Corrigan, which therefore left a majority of the arbitrators against sustaining this defense, and if the case had stopped there, if there had been no other question or defense in this case, undoubtedlv the findings would have been by the arbitrators in favor of the plaintiff, rescinding this contract and restoring the parties to the position which they sustained towards the stock and the subject-matter of the contract at the time it was made and prior thereto.

It is this failure of the arbitrators to concur, and this alone which has been made the ground of this complaint.    How is it possible for the plaintiff to complain of this failure of the arbitrators to all concur as to this subject-matter?    A majority failed to concur, not in any fact which was the basis of his right of

recovery, but they failed all to concur in finding the facts essential to sustain a complete and adequate defense to his right of recovery. In fact, a majority of them did not concur in it, and it would have been impossible, either under this contract or any other that would require a majority to make a finding to have sustained that defense, and as the plaintiff had the benefit of it, and as the holding was in his favor, certainly he cannot camplain, and in my judgment, the acts of the arbitrators were clearly proper, and the plaintiff had no right to complain thereof. It was not necessary that the arbitrators should find affirmatively that superior advantages of knowledge were possessed by Mr. Rockefeller and that he did not pay an adequate price; that was not necessary in any view of the issues upon the findings which they made. Those only became material in a defense made by the defendant. The law puts its stamp upon the transaction itself and presumed and inferred, from the relationship existing between the parties, that these two men had been dealing, because of that relationship, at a disadvantage, so far as the plaintiff was concerned, and at an advantage so far as this defendant was concerner, because the defendant was trustee and the plaintiff was *cestui que trust,* in relation to the subject-matter of the same. And that was the view these arbitrators took, for having thus found that the defendant had not affirmatively made out his defense to this right of recovery which they had found in the plaintiff, they then treated the relation of the parties, so far as the issues are concerned, as a right to the relief prayed for by the plaintiff, unless some other reason existed for their refusal to give that relief; and they assumed then upon the findings which they had made, that this was a contract which, at the time it was entered into by the immediate parties, was voidable by the plaintiff at his election, and was binding upon both of the parties until such an election was made by the plaintiff, for so far as the defendant was concerned, no act of his could invalidate the contract. He could only await the action of the plaintiff in that matter. To thus invalidate this contract, involving hundreds of thousands of dollars worth of property, there was certainly required some definite and affirmative act on the part of the plaintiff which would convey clearly to the defendant his intention no longer to recognize the contract as an existing obligation upon him or to longer take and enjoy the advantages of the same. As to this duty on the part of the plaintiff, the arbitrators found that the plaintiff did not act until the filing of the petition in this case, about two years after the contract was made, as at that time only did the plaintiff make his election to treat the contract as no longer binding upon

him, and inform the defendant of his election in that respect.

Now, as I have said, as to the correctness of these findings, either of fact or law, this court has nothing whatever to do; it neither has the means of reviewing them, nor the power to review them.

In this situation of the proof upon the hearing, the testimony shows the defendant urged that this lapse of time between the making of the contract and the plaintiff's election to treat it as void, constituted a complete defense to his right to recover under the equitable doctrine known as laches; that is, that where in equity a contract is voidable at the election of a party because of some infirmity existing at its inception, that right thus existing at that time may be lost to the party by postponing the exercise of the same beyond a reasonable time. This doctrine is clearly established and is based on considerations of justice and right which are just as sacred in the eyes of the law as are those which give to the party the right to annul his contracts for infirmities existing in their inception.

In regard to this defense in the case, the arbitrators found that when this contract was entered into neither party understood that the relation between them was such that the plaintiff had a right to rescind the contract, but within a very few weeks after the contract was executed, the plaintiff was fully advised of this right, and the defendant, in good faith, offered to give him the information which he sought, which would have borne upon the question of the value of the stock, so far as such information was within the defendant's possession, and the defendant offered to show him statements, such as were accessible, for the information, of the stockholders, but the plaintiff saw fit not to avail himself of these means of information, and the arbitrators all concurred in finding the means of information open and accessible to the plaintiff, which would have enabled him to decide for himself whether he would abide by his contract, or declare it void. The arbitrators very justly remark in this opinion, and state the equitable doctrine applicable to these facts, as follows: "While he (the plaintiff) may have had a right to rescind, he was not at liberty to play fast and loose with the defendant in the matter, nor to wait and see whether subsequent changes in the value of the stock made it for his interest to rescind or to let the purchase stand, and to govern his actions accordingly." "This," they say, "is a just and inflexible rule and applied with especial force to transactions in securities of a fluctuating character, such as was the stock in question." Proceeding, they say, "The plaintiff was bound to make his election promptly. He did not do so, but waited

about two years, when he commenced this action. We are of the opinion that whatever right to rescind he ever had had then expired by reason of his not having within a reasonable time made his election and notified the defendant thereof," thus all concurring in sustaining this defense interposed by the defendant to the cause of action which the arbitrators had found existed in plaintiff's favor.

Then, to briefly recapitulate. As to plaintiff's first ground of recovery, that this contract was voidable at the time it was entered into because of the defendant's actual fraud, inducing the plaintiff to make the sale, the arbitrators all concurring, decided against the plaintiff.

As the plaintiff's second, and only other ground of recovery, that this contract was voidable at the time it was entered into because of the relationship of trustee and *cestui que trust,* existing between the plaintiff and the defendant, which gave to the defendant an unlawful advantage over plaintiff, the arbitrators all concurring decided in favor of the plaintiff.

As to the defendant's first defense that he did not have such advantage over plaintiff, either in knowledge or means of knowledge, or by reason of value of stock or price paid, the arbitrators all concurred in deciding that this defense could not prevail against the plaintiff, because the evidence had not satisfied a majority of them, and all did not concur therein.

As to the second defense of the defendant, that plaintiff, by reason of his delay in determining whether he would abide by the contract or annul it, he had lost his right to rescind the same, the arbitrators all concurring decided in favor of the defendant. Thus all the arbitrators concurred in the determination of every material fact necessary to sustain an award, which would be conclusive as to all the issues between the parties in this case. It is claimed, however, that in holding that, by allowing two years to elapse between the time the plaintiff had knowledge of his right to rescind and the rescission of the contract, he lost his right, the arbitrators have clearly erred against the plaintiff, as the statute of limitations gives four years in which to bring the action. I had supposed that the difference between the doctrine of laches in equity and the statute of limitations was too well understood to require any comment and consideration. As I have already said, so far as the findings of law and facts are concerned, this court has no power whatever to review them, but it is perfectly apparent that one of these doctrines applies to the time within which the party is to take advantage of his right to put an end to a contract and rescind the same, while the statute of limitations, fixes the time

within which he must bring his action to enforce that rescission, if such action is necessary. Upon the notification by one party to another of a rescission of a contract because of the infirmities in the inception of the contract, such as were alleged in this petition, the party thus notified has two courses he may follow. He may either join with the other party in the contract in restoring each to their original condition, or he may refuse and have a court adjudicate and pass upon either right. The two things have no other relation, one to the other. The statute fixes four years in which this action must be brought, and that is an arbitrary time with no variation, while equity determines the length of time within which such notification must be made, and what lapse of time constitutes fatal laches, by consideration of the subject-matter of the contract, and relations of the parties and the facts. This period is not arbitrary nor fixed, but changes with the circumstances of each particular case.

For these considerations, in my judgment, the defendant should have the final order, and judgment in his favor entered in this case, which is prayed for in the supplemental answer, and which is found in his favor by these arbitrators in their award.

Stevenson Burke and W. H. Poppleton, for plaintiff.

Kline, Carr, Tolles & Goff, for defendant.